**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **YIBO XU,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 21-0550** |
| **v.** | : | |
| | : | |
| **XIN GU,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                      JANUARY 3, 2022

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *joint motion for approval of settlement agreement*, [ECF 16], with respect to claims brought by Plaintiff Yibo Xu ("Plaintiff Xu") and Plaintiff Xingxiao Jiang ("Plaintiff Jiang") (together, "Plaintiffs") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. § 333.101 *et seq*., the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.8 *et seq.*, and Pennsylvania common law against Defendant Yumco LLC d/b/a R&G Ping Pong ("Defendant Yumco"), Defendant Ranko Inc. d/b/a Andorra Ping Pong ("Defendant Ranko"), Defendant Chaomin Ran a/k/a Albert Ran ("Defendant Ran"), and Defendant Xin Gu a/k/a Diana Gu Ran ("Defendant Gu") (together, "Defendants").[1]  For the reasons set forth, the joint motion for approval of the Settlement Agreement is granted, *in part*, and denied, *in part*.  This Court is satisfied that the proposed Settlement Agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and concludes that the Settlement Agreement—specifically, the release of claims provision—impermissibly frustrates implementation of the FLSA in the workplace.

---

[1]      Although Plaintiffs initially brought this suit as a class action, the case was never certified as such, and the joint motion for approval of the Settlement Agreement pertains to the two named Plaintiffs *only*.

**BACKGROUND**

Defendant Yumco owned and operated the R&G Ping Pong restaurant in Wayne, Pennsylvania; Defendant Ranko owned and operated the Andorra Ping Pong restaurant in Philadelphia, Pennsylvania; and Defendants Ran and Gu are owners, officers, shareholders, and managers of Yumco and Ranko.  Plaintiffs, former employees of Defendants, filed this lawsuit, in which they contend that Defendants violated the FLSA, the PMWA, the WPCL, and Pennsylvania common law by willfully failing to compensate them for the overtime they worked during various periods between 2012 and 2020.  Defendants deny these allegations and maintain that they acted in good faith and with reasonable grounds for believing they were in compliance with the FLSA and state law requirements.

Following their initial conference, the parties engaged in discovery and settlement discussions.  They exchanged documents and information concerning the facts underlying Plaintiffs' claims, including Plaintiffs' time, pay, job duties, work schedules, lodging and utilities benefits, and the operational and financial impact that the COVID-19 pandemic has had on Defendants' business.  The exchange gave the parties a clear understanding of the nature and viability of the asserted claims and defenses.  The parties engaged in rigorous, arms-length settlement negotiations, each represented by counsel experienced in wage-and-hour matters similar to the case *sub judice*.  The parties' negotiations resulted in a settlement of all claims, memorialized in a written proposed Settlement Agreement and Release of Claims (the "Settlement Agreement"), for which the parties now seek this Court's approval.

**DISCUSSION**

The FLSA provides, *inter alia*, that employers shall compensate their employees at a minimum of one and one-half times the employee's regular wage for any hours worked in excess of

forty hours per week. 29 U.S.C. § 207(a)(1). The PMWA provides for the same requirements, 43 Pa. Stat. § 333.104(c), and the WPCL allows for employees to bring an action against an employer for unpaid wages, 43 Pa. Stat. § 260.9a.

As noted, the parties here have jointly proposed a Settlement Agreement to resolve their disputes, including, disputes under the FLSA. Whether court approval of settlement agreements involving FLSA claims is required is an issue the United States Court of Appeals for the Third Circuit ("Third Circuit") has yet to address. Nonetheless, other district courts in this Circuit have followed the position taken by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982),[2] which held that court approval is required for proposed settlements in a FLSA lawsuit filed pursuant to 29 U.S.C. § 216(b). This Court is persuaded and guided by this holding.

Judicial review of the proposed settlement agreement requires this Court to scrutinize the parties' proposed Settlement Agreement and determine if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions, *Lynn's Food Stores*, 679 F.2d at 1355, whether the settlement agreement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace, *Lyons v. Gerhard's Inc.*, 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015) (citations omitted), and whether attorney's fees and costs are reasonable, 29 U.S.C. § 216(b). Each of these determinations will be separately discussed.

### Is the proposed Settlement Agreement a fair and reasonable settlement of a bona fide dispute?

"A proposed settlement agreement resolves a bona fide dispute if it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in

---

[2]      *See, e.g.*, *Brown v. U.S. Postal Service*, 2021 WL 5083981 (E.D. Pa. Nov. 2, 2021); *Bettger v. Crossmark, Inc.*, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015); *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012); *Morales v. PepsiCo, Inc.*, 2012 WL 870752 (D.N.J. Mar. 14, 2012).

dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'"
*McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (quoting *Lynn's Food
Stores*, 679 F.2d at 1354). Thus, as a threshold issue, this Court must determine whether the parties'
dispute is a "bona fide" dispute. "A dispute is 'bona fide' where it involves factual issues rather than
legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp.
3d 516, 530 (E.D. Pa. 2016). "In essence, for a bona fide dispute to exist, the dispute must fall within
the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual
rejection of that claim when it is presented." *Id.*; *see also Berger v. Bell-Mark Techs. Corp.*, 2019
WL 1922325, at *3 (M.D. Pa. Apr. 30, 2019) ("A bona fide dispute is one in which there is some
doubt whether the plaintiff would succeed on the merits at trial.").

Here, as evidenced by the facts alleged in the complaint and the joint motion for approval of
the Settlement Agreement, this FLSA action involves disputed issues of fact as to whether Defendants
correctly paid Plaintiffs for all overtime worked. Based on the factual representations and arguments
offered in the joint motion for approval of the Settlement Agreement, this Court is satisfied that a
bona fide dispute exists under the FLSA regarding Defendants' liability and Plaintiffs' damages.[3]

Having resolved the initial threshold issue of whether a bona fide dispute among the parties
exists, this Court must next determine whether the proposed Settlement Agreement provides a fair
and reasonable resolution of this bona fide dispute. To make such determination, courts in this Circuit
engage a nine-factor test for evaluating proposed class action settlement agreements, *i.e.*, the *Girsh*
factors. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Lyons*, 2015 WL 4378514, at *4. The
*Girsh* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction

---

[3]    In addition to the FLSA claims, the joint motion for approval of the Settlement Agreement also
discusses Defendants' potential counterclaim averring that Plaintiff Xu may have improperly used restaurant
premises and/or improperly communicated with customers, thus, breaching a duty of loyalty under the faithless
servant doctrine.

of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009) (citing *Girsh*, 521 F.2d at 157). No one factor, however, is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Because *Girsh* was a class action, some of the factors are of "little help, if not irrelevant in the single-plaintiff context," *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016), and some do not apply. This Court finds that factors 1, 3–5, and 8–9 are relevant to this two-plaintiff action and, after properly weighing these factors, further finds that they weigh in favor of approving the proposed Settlement Agreement.

*Girsh Factors*

*Factor 1: The complexity, expense, and likely duration of the litigation*

The settlement was reached before a responsive pleading was filed and after initial discovery ensued. Had this settlement not been reached, Defendants may have filed a motion to dismiss, which likely would have prompted a round of briefing by the parties. If the case survived the motion to dismiss, Defendants would have been required to prepare an answer and discovery would have continued. Such discovery may have involved depositions of Plaintiffs; depositions of representatives and customers of Defendants; a detailed review of Plaintiffs' job duties, work hours, pay, and benefits; and a detailed review of Defendants' policies, practices, and business records. One or both parties may have moved for summary judgment, which would have likely prompted another round of briefing. If the case survived summary judgment, the matter may have proceeded to trial to determine

the merits of the parties' individual claims, liability, and damages, if any.  The continued litigation of Plaintiffs' claims would have required significant additional expense and a substantial delay before any potential recovery.  Further, no matter the outcome of a trial, it is likely that either one or both parties would have filed an appeal, leading to further litigation costs and delay in any realized recovery.  Thus, the avoidance of the unnecessary expenditure of time and resources benefits the parties and weighs in favor of approving the proposed settlement.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and potential opposition by the defendant weigh in favor of approving settlement).

*Factor 3: The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).  When evaluating this third factor, courts must evaluate the procedural stage of the case at the time the proposed settlement was made to assess whether counsel adequately appreciated the merits of the case while negotiating.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144–45 (E.D. Pa. 2000).  Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

Prior to reaching a settlement, this case was actively litigated for eight months.  The parties conducted initial discovery and exchanged documents and information pertinent to each other's

positions and settlement demands.   As a result of the discovery conducted, the parties had an opportunity to identify and grasp the strengths and weaknesses of each party's case.   Consequently, this Court finds that this factor weighs in favor of approval.

*Factor 4:  The risks of establishing liability*

This fourth *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement.   The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement.   *In re Warfarin*, 391 F.3d at 537.   Here, Defendants deny liability and dispute the number of hours Plaintiffs allege to have worked overtime and, further, contend that Plaintiff Xu was an exempted manager and not entitled to overtime.   If this case had proceeded to trial, it is possible that Plaintiffs would not have established Defendants' liability and, therefore, obtained any recovery. The proposed Settlement Agreement avoids the risk that Defendants may not be found liable.   Thus, this Court finds that this factor weighs in favor of approval.

*Factor 5:  The risks of establishing damages*

This fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time."   *In re Cendant*, 264 F.3d at 238–39.   As with the fourth factor, the proposed settlement will allow Plaintiffs to obtain prompt financial relief.   If this case were to proceed, it is possible that Plaintiffs may fail to establish any damages, may establish damages in an amount less than the amount they would recover by way of the settlement, or may establish damages only to have the judgment appealed.   In light of this uncertainty regarding damages, the proposed settlement amount (which represents 78% of the amount Plaintiffs claim to be owed) is a positive result.   Accordingly, this factor weighs in favor of approval.

*Factors 8–9:  The range of reasonableness of settlement in light of the best possible recovery and all attendant risks of litigation*

Often considered together, the last two *Girsh* factors evaluate whether the settlement agreement represents "a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Prudential Ins. Co. Am. Sale Practice Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998).

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  As noted, Plaintiffs' recovery under the proposed Settlement Agreement represents 78% of the amount they claim to be owed.  This settlement amount is reasonable in light of the attendant risk that Plaintiffs may not obtain any recovery or a recovery equal to or greater than 78% of what they claim to be owed if this case proceeded through trial.  Thus, these factors weigh in favor of approval.

Consequently, upon consideration of each of the relevant *Girsh* factors analyzed and in light of the presumption of fairness that attaches to settlement agreements, *see In re Warfarin*, 391 F.3d at 539, this Court finds that the parties' proposed Settlement Agreement is a fair and reasonable resolution of the parties' bona fide disputes.

**Does the proposed Settlement Agreement impermissibly frustrate implementation of the FLSA?**

Having determined that the proposed Settlement Agreement is a fair and reasonable resolution of the parties' disputes, this Court must determine whether the Settlement Agreement furthers or "impermissibly frustrates" implementation of the FLSA.  *Bettger*, 2015 WL 279754, at *8.  When analyzing whether a settlement agreement furthers or frustrates the implementation of the FLSA, a

district court must scrutinize the settlement agreement for the presence of "side deals" that place constraints on employees. *Wahpoe v. Staffmore LCC*, 2020 WL 5554413, at *4 (E.D. Pa. Sept. 16, 2020). Such side deals, if they are too restrictive or overly broad, run contrary to the history and policy of the FLSA. *Id.* at 5–7. In the case at issue here, the parties have two such side deals: a release of claims provision and a confidentiality provision.

The parties submit that "the Release of Claims provision in the parties' Settlement Agreement provides for a fair and reasonable mutual general release of claims that were raised or could have been raised in this lawsuit and wage-and-hour-related claims arising before the date of the Settlement Agreement." (Joint Mot. for Approval of Settlement, ECF 16, at p. 8). This Court disagrees and finds that the parties' representation of the effect of the release does not correspond to the text of the Settlement Agreement. That is, the Settlement Agreement provides that *Plaintiffs* waive all claims that "were raised or could have been raised in the Lawsuit or that may arise by reason of *any matter* occurring prior to the effective date of this Agreement," (Settlement Agreement, ECF 16-1, at p. 6), while *Defendants* waive all claims "related to Plaintiffs' employment . . . up to and including the execution date of this Agreement," (Settlement Agreement, ECF 16-1, at p. 7). The overly broad release clause with respect to Plaintiffs' waiver is "antithetical to the FLSA and therefore must be excluded." *Haley v. Bell-Mark Tech. Corp.*, 2019 WL 1925116, at *5 (M.D. Pa. Apr. 30, 2019); *see also Rubbo v. Peoplescout, Inc.*, 2017 WL 2010311, at *3 (E.D. Pa. May 11, 2017) (determining that a settlement agreement impermissibly frustrated the implementation of the FLSA because the plaintiff waived all claims arising prior to the signing of the settlement agreement); *Kraus*, 155 F. Supp. 3d at 532–33 (declining to approve a release provision precluding the plaintiff from raising any and all claims arising from events predating the execution of the settlement agreement); *Bettger*, 2015 WL 279754, at *9 (finding release provisions inappropriately comprehensive because the plaintiff

released all claims she may have had against the defendant prior to the execution date of the agreement). The parties' release must reconcile this deficiency.

The proposed Settlement Agreement's confidentiality provision, however, is sufficiently limited in scope. The confidentiality provision is limited solely to the disclosures of the terms of the proposed Settlement Agreement by Plaintiffs and/or their counsel to the press and public-facing media. District courts in this Circuit have found such confidentiality provisions sufficiently limited in scope. *See, e.g.*, *McGee*, 2014 WL 2514582, at *3; *In re Chickie & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014). Notwithstanding this confidentiality provision, this Court notes that the proposed Settlement Agreement and all of the filings in this case are publicly available and were not filed under seal.

### *Are Attorney's Fees and Expenses Reasonable?*

As compensation for his legal services and efforts, Plaintiffs' counsel requests that this Court approve the provisions of the proposed Settlement Agreement that provide for the reimbursement of attorney's fees and costs in the amount of $30,328.04. This fee and cost portion represents 33.7% of the settlement amount—the contingency fee contemplated and agreed to by Plaintiffs and their counsel at the outset of their representation.[4] Although the contingency agreement was not filed in support, Plaintiffs' counsel relies upon the Declaration of Jian Hang, attached to the motion, to establish the reasonableness of the fee. [ECF 16-2].

The FLSA provides for the payment of attorney's fees and costs. Specifically, section 216(b) provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

---

[4]   The joint motion for approval of the Settlement Agreement references an Exhibit "B," which appears to be intended to correspond to a private contingent fee agreement between Plaintiffs and their counsel. (Joint Mot. for Approval of Settlement, ECF 16, at p. 9). Notably, exhibits labeled 1, 2, 3, and 4 were filed. However, none contain the referenced private contingent fee agreement.

Courts within this Circuit have predominantly used the percentage-of-recovery method, in which a fixed portion of the settlement fund is awarded to counsel, to determine a reasonable attorney's fee in wage-and-hour cases. *Kraus*, 155 F. Supp. 3d at 533. The factors that the court considers under the percentage-of-recovery method to evaluate the appropriateness of an attorney's fee award are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). These factors need not be applied in a formulaic way, and one factor may outweigh the others. *Id.*

In weighing the relevant aforementioned factors, this Court finds that these factors weigh in favor of approving the requested amount of attorney's fees. Clearly, this settlement, unlike the class action settlements contemplated by the aforementioned factors, benefits the two plaintiffs who have agreed to its terms. As noted in the *Girsh* analysis, the parties, represented by experienced counsel, engaged in intensive discovery prior to reaching a settlement of their disputes. Notably, Plaintiffs' counsel has extensive experience in similar complex wage-and-hour litigation. The possible risk of non-payment and not proving liability is real. As noted, the proposed Settlement Agreement provides for attorney's fees and costs in the amount of $30,328.04, which represents approximately a 33.7% contingency fee for counsel. This percentage fee falls within the range of attorney's fees awarded in similar cases. *See, e.g.*, *Schwartz v. Pa. State Univ.*, 2017 WL 1386251, at *5 (M.D. Pa. Apr. 18, 2017). Accordingly, this Court finds that these factors weigh in favor of approval of the fee and cost request.

### *Lodestar Cross-Check*

In percentage-of-recovery cases, such as this one, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar," *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455.

A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Int. Rsch. Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

As revealed in the Declaration of Jian Hang, the hourly rate for Plaintiffs' counsel ($350.00) is well within the range of what is reasonable and appropriate in this market. The attorney has substantial experience in FLSA cases, and his hourly rate is also within the range charged by other attorneys with comparable experience levels for litigation of a similar nature. *See, e.g.*, *Barel v. Bank of Am.*, 255 F.R.D. 393, 403–04 (E.D. Pa. 2009).

"In calculating the second part of the lodestar determination, the time reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive,

redundant, or otherwise unnecessary." *Pa. Env't Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. 461 U.S. at 434. Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

Here, the Tax Invoice Container, attached to the motion, includes a summary of the hours worked by Plaintiffs' counsel. [ECF 16-3]. Plaintiffs' counsel reports 93.2 hours of work at an hourly rate of $350.00. Upon review of the Declaration of Jian Hang and the Tax Invoice Container, it appears that Plaintiffs' counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Having found the hourly rates and hours expended reasonable, the lodestar for Plaintiffs' counsel is $32,620.00 for 93.2 hours of attorney work at a rate of $350 an hour. Counsel's request for $30,328.04 as a percentage-of-recovery represents an amount less than the lodestar. Such an amount is consistent with other attorney's fees awards that amounted to various multiples above the lodestar amount. *See, e.g.*, *Mabry v. Hildebrandt*, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%."); *In re Prudential*, 148 F.3d at 341; *see also Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving multiplier of "slightly above 3" in FLSA collective action). Therefore, the lodestar cross-check analysis supports approval of the requested attorney's fees. As such, this Court approves the request for attorney's fees and costs, which the Court finds to be reasonable.

**CONCLUSION**

For the reasons stated herein, this Court grants, *in part*, and denies, *in part*, the parties' motion to approve the proposed Settlement Agreement.  The parties are to submit a release consistent with the provisions of the FLSA.  This Court further finds that the request for attorney's fees and costs is reasonable and awards Plaintiffs' counsel attorney's fees and costs in the amount of $30,328.04.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*